UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| CHARLES S. KIMBERL,<br>d/b/a DANNY'S GUN REPAIR | PETITIONER |
| v. | CIVIL ACTION NO. 3:13-cv-00360-H (*e-filed*) |
| UNITED STATES OF AMERICA, | RESPONDENT |

## UNITED STATES' OPENING BRIEF
## IN SUPPORT OF AGENCY DECISION

The defendant United States, on behalf of its client agency the Bureau of Alcohol, Tobacco and Firearms ("BATF") hereby files its opening brief in support of the agency's decision to revoke the firearms license previously granted to Charles A. Kimberl, d/b/a Danny's Gun Repair, the Petitioner in this case.

### INTRODUCTION

This case comes before the Court pursuant to Title 18, United States Code (U.S.C.), Section 923(f)(3), as a petition for review of the revocation of Petitioner's Federal firearms license by an agency of the United States, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). For the reasons that follow, the Court should affirm the agency's decision.

### FEDERAL FIREARMS LICENSING PROVISIONS

The Petitioner is engaged in the business of dealing firearms and is therefore regulated by federal law as found in the Gun Control Act of 1968 ("GCA"), 18 U.S.C., Chapter 44 and implementing regulations under Title 27, Code of Federal Regulations (C.F.R), Part 478.[1] Pursuant to 18 U.S.C. Section 923(a) and 27 C.F.R. Section 478.41,

---

[1] The Homeland Security Act of 2002, Pub. L. No. 107-296, section 1111 (Nov. 25, 2002) divided the Bureau of Alcohol, Tobacco and Firearms into two separate agencies. With respect

"no person shall engage in the business of importing, manufacturing, or dealing in firearms, or importing or manufacturing ammunition, until he has filed an application with and received a license to do so from the Attorney General." If an individual qualifies for a license, it is issued for a period of three years. 18 U.S.C. Section 923(a)(3)(b) and 27 C.F.R. Section 478.49. The Director of ATF is authorized by the Attorney General to enforce the provisions of the GCA. 28 C.F.R. Section 0.130(a)(1). The principal ATF regional official responsible for the administration of the GCA is the Director, Industry Operations ("DIO"). 27 C.F.R. Section 478.11.

PROCEDURAL HISTORY/STATEMENT OF FACTS

1. Charles S. Kimberl, doing business as Danny's Gun Repair (Danny's), was issued a Federal firearms license as a dealer in firearms other than destructive devices on February 8, 2007. The business was located at 3904 Bishop Lane, Suite 4, Louisville, Kentucky 40218.

2. Charles Kimberl listed himself and Scott Stoke as the responsible persons for the business. Responsible persons are individuals possessing directly or indirectly, the power to direct or cause the direction of the management, policies and practices of the business insofar as they pertain to firearms.

---

to the enforcement of the Federal firearms laws, Title IX, subtitle B, section 1111 of the Act transferred the authority to enforce those laws to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Department of Justice, January 24, 2003. This transfer required the reorganization of Title 27 of the Code of Federal Regulations. Part 178 of Title 27 of the Code of Federal Regulations was recodified as Part 478. The authority vested in the Secretary of Treasury is now vested in the United States Attorney General. *Id.* at Sections 1111(a)(4) and 1111(c)(1).

3. Scott Stoke ran the businesses' day to day operations. Charles Kimberl was largely uninvolved with the business. (Administrative Record (AR), Government Exhibit (GX) 6, (DN 10-1, p 24)).[2]

4. An ATF compliance inspection of Danny's initiated in November, 2011 disclosed that Scott Stoke had employed his son Wesley Stoke at the store despite the fact that Wesley Stoke is prohibited from possessing or receiving firearms pursuant to Title 18, United States Code (U.S.C.) §§ 922(g)(1) as a convicted felon, 922(g)(3) as a person who is an unlawful user of controlled substances, and 922(n) as a person under indictment for a crime punishable by a term of imprisonment exceeding one year.

5. The inspection disclosed that Danny's aided and abetted the unlawful possession of firearms by Wesley Stoke. Scott Stoke knew his son Wesley Stoke was an unlawful user of, or addicted to, controlled substances. Despite knowing that fact, Danny's employed Wesley Stoke in the store in some capacity from approximately February, 2007 until approximately March, 2012, allowing him actual and constructive possession of firearms and ammunition during that time. Wesley Stoke is listed as the sales clerk on 60 ATF Forms 4473, Firearms Transaction Records. (Sample forms at AR – GX 12 (DN 10-1, pp. 246-63).

6. Wesley Stoke's employment at the store allowed him to steal 37 firearms from Danny's between February 11, 2011 and June 7, 2011. Wesley Stoke then pawned the firearms to get drug money for himself. (AR – GX 9). Danny's allowed Wesley Stoke to possess firearms in the store when Scott Stoke knew Wesley Stoke was

---

[2]The Administrative Record was filed previously and appears at Docket Number 10-1. References to the Record will appear as "AR" followed by the appropriate Government Exhibit ("GX") number, if any, followed by the Docket page number in parentheses (for example, "DN 10-1, p. 1").

an unlawful user of or addicted to controlled substances in violation of 18 U.S.C. §§ 2, 922(g)(3), 922(d)(3) and 27 C.F.R. § 478.99(c)(3).

7. Scott Stoke knew that Wesley Stoke was convicted in Larue County, Kentucky of one count of Burglary 2nd Degree in violation of Kentucky Revised Statute (K.R.S.) § 511.030 and three counts of Criminal Possession of a Forged Instrument 2nd Degree in violation of K.R.S. § 516.060 on November 10, 2011. (AR – GX 7 (DN 10-1, p. 22)). Both crimes are punishable by a term of imprisonment exceeding one year and thus also prohibit Wesley Stoke from possessing firearms and ammunition.

8. Scott Stoke also knew that Wesley Stoke was indicted in Jefferson County, Kentucky on January 20, 2012 for Criminal Possession of a Forged Instrument 2nd Degree in violation of K.R.S. § 516.060 and Theft by Unlawful Taking (Firearm) in violation of K.R.S. § 514.030(2). (AR – GX 8 (DN 10-1, p. 228)). By virtue of being under indictment for two crimes punishable by a term of imprisonment exceeding one year, Wesley Stoke was prohibited from the receipt of firearms and ammunition.

9. Despite knowing of Wesley Stoke's status as a convicted felon and person under indictment for felonies, Danny's allowed him to continue to work in the store and possess firearms and ammunition during the time period following his conviction and indictment up until approximately March, 2012. Scott Stoke allowed Wesley Stoke to possess and receive firearms in the store when he knew Wesley Stoke had been convicted of the above listed crimes and was indicted for additional crimes. This is in violation of 18 U.S.C. §§ 2, 922(g)(1), 922(d)(1), 922(n) and 27 C.F.R. § 478.99(c)(1).

10. Scott Stoke and Wesley Stoke acknowledged the above facts in statements to ATF investigators. (AR – GX 4,5, and 13 (DN 10-1, pp. 207, 211, 264)).

11. Wesley Stoke purchased a firearm from Danny's on February 10, 2011. He completed ATF Form 4473 number WS021011. (AR – GX 10 (DN 10-1, p. 241). At the time he completed the form Wesley Stoke was an unlawful user of or addicted to controlled substances and was thus prohibited from the possession of firearms and ammunition. Wesley Stoke falsely answered "No" to Item 11(e) on the form which asks:

> "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug or any controlled substance?"

Danny's knew at the time that Wesley Stoke was an unlawful user of or addicted to controlled substances. Despite this knowledge Scott Stoke signed the form and certified as follows:

> "I certify that my answers in Sections B and D are true, correct and complete. I have read and understand the Notices, Instructions and Definitions on ATF Form 4473. On the basis of :(1) the statements in Section A (and Section C if the transfer does not occur on the day Section A was completed); (2) my verification of the identification noted in question 20a (and my reverification at the time of transfer if the transfer does not occur on the day Section A was completed); and 3) the information in the current State Laws and Published Ordinances, *it is my belief that it is not unlawful for me to sell, deliver, transport or otherwise dispose of the firearm(s) listed on this form to the person identified in Section A.*"

The certification constitutes a false entry onto the ATF Form 4473 in violation of 18 U.S.C. § 922(m) and 27 C.F.R. § 478.128(c).

12. After the ATF inspection was completed and the above violations identified, an ATF Form 4500, Notice of Revocation of License was issued by ATF Director of Industry Operations, Louisville Field Division to Danny's on June 8, 2012. (AR-GX 1 (DN 10-1, p. 4)).

13. On June 18, 2012 Danny's timely requested a hearing concerning the revocation of its' license. (AR – GX 2 (DN 10-1, p. 195)).

14. On September 5, 2012 a hearing concerning the revocation of Danny's license was held at the ATF Louisville Field Division Office, 600 Dr. Martin Luther King Jr. Place, Suite 500, Louisville, Kentucky 40202.

15. On December 19, 2012 the hearing officer issued his report and recommendation to the ATF Director of Industry Operations, Louisville Field Division finding that Danny's had willfully committed the violations cited in the ATF Form 4500, Notice of Revocation and recommending the license be revoked.  (DN 10-1, p. 9).

16. On January 23, 2013 the ATF Director of Industry Operations, Louisville Field Division issued an ATF Form 5300.13, Final Notice of Denial of Application or Revocation of Firearms License.  (DN 10-1, p. 4).

17. Danny's then filed the instant action in this Court requesting review of the agency's Revocation action.

18. None of the above facts are in dispute between the parties in this matter. (See Petitioner's initial brief at p. 1; see also findings of hearing officer, DN 10-1, p. 9, et seq.).

## STANDARD OF REVIEW

18 U.S.C. § 923(f)(3) allows a party whose license to deal in firearms is revoked after a hearing, to file a petition for *de novo* review within 60 days after notice of the denial.  The district court may consider evidence outside the record.  *Id.*  If the Court finds that the ATF wrongly denied or revoked the license, the "court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the Court.  *Id.*

*De novo* review of the denial or revocation of a federal firearms license, however, normally does not require consideration of matters outside the administrative record,

and the courts therefore generally do not conduct a full evidentiary trial or hearing as a matter of right. *DiMartino v. Buckley*, 19 Fed. Appx. 114, 115-16 (4th Cir. 2001); *Cucchiara v. Secretary of Treasury*, 652 F.2d 28, 30 n.1 (9th Cir. 1981); *Perri v. Department of Treasury BATF*, 637 F.2d 1332, 1335 (9th Cir. 1981); *Stein's*, 649 F.2d at 466-67; *Pinion Enterprises v. Ashcroft*, 371 F. Supp. 2d 1311, 1314 (D. Ala. 2005); *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 348 F. Supp. 2d 1299, 1306 (D. Ala. 2004); *Breit & Johnson Sporting Goods, Inc. v. Ashcroft*, 320 F. Supp. 2d 671, 673 (D. Ill. 2004) ("review" may be confined to the administrative record or may be supplemented by the admission of additional evidence…"); *T.T. Salvage Auction Co. Inc. v. Secretary*, 859 F. Supp. 977, 979 (E.D.N.C. 1994). The lead case on this issue, *Stein's*, explains:

> Although the legislative history of Section 923(f)(3) speaks of "de novo review," we do not understand that history to require the district court to hold a hearing and receive evidence beyond that contained in the administrative record in every case. The language of the statute itself is permissive: "the court <u>may</u> consider any evidence submitted by the parties." (Emphasis added.) Instead we believe that Congress intended to afford the district court the discretion to receive additional evidence to be considered along with that in the administrative record when some good reason to do so either appears in the administrative record or is presented by the party petitioning for judicial review.

*Stein's*, 649 F.2d at 466 (footnotes and citations omitted).

Thus while "the district court [has] the discretion to receive additional evidence to be confused to be considered along with the administrative record when some good reason to do so either appears in the administrative record or is presented by the party petitioning for judicial review . . . . Consideration of judicial economy suggests that trial anew of factual matters already litigated should be avoided unless substantial doubts infect the agency's findings of fact." *Perri*, 637 F. 2d at 1335.

Absent a genuine issue of material fact, a court may properly grant summary judgment without conducting an evidentiary hearing in review of firearms administrative actions. W*illingham*, 348 F. Supp. 2d at 1299; *Breit & Johnson*, 320 F. Supp. 2d.at 673; *T.T. Salvage*, 859 F. Supp. at 977; *Al's Loan Office*, 738 F. Supp. at 223 (citing *Cucchiara*, 652 F.2d at 30, n.1); *3 Bridges*, 216 F. Supp. 2d at 655; *see also Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004).

Accordingly, the district court is not required to hear any new evidence, and may properly dispose of the Petition based upon the evidence contained in the administrative record. The Administrative Record has been submitted (DN 10-1), Petitioner proposed no additions or subtractions thereto within the allotted time frame, and Petitioner presents no new factual issues for the Court's consideration, focusing instead upon a legal issue, as further discussed below. Thus the case is ripe for resolution on the briefs.

ARGUMENT

I. THE COURT SHOULD AFFIRM THE AGENCY'S REVOCATION DECISION.

As noted earlier, Petitioner does not dispute that the subject violations occurred. Rather, he claims that he had no direct knowledge of the violations, and that consequently, he cannot legally be held responsible for violations committed by the day-to-day manager of Danny's, Scott Stokes and his son Wesley Stokes. As shown below, Petitioner's position is untenable, and the Court should uphold the agency's action to revoke the license.

A. Petitioner Was Responsible for Adhering to Gun Control Act Rules and Regulations.

As holder of the Federal Firearms License for Danny's, Petitioner was obligated to follow the rules. "An overarching purpose of the GCA is to protect the public by

ensuring that federally licensed gun dealers carefully follow the rules . . . . In sum, the business opportunity afforded by a federal firearms license is a privilege, not a right. With that privilege comes a responsibility to adhere to GCA rules and regulations." *See Shawano Gun & Loan v. Hughes* 2010 U.S. Dist. Lexis 77907 (E.D. Wis. 2010).

      B.      <u>Petitioner Purposefully Disregarded or Was Indifferent to the Requirements of the Law</u>.

Petitioner claims that because he purportedly did not know the violations were occurring, he could not have committed a "willful" violation of the law and regulations. Petitioner misapprehends the law on this issue. "The majority of circuits, including the Sixth Circuit, have consistently held that where a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer "willfully" violated the GCA." *Appalachian Resources Development Corporation d/b/a Bend of the River v. McCabe*, 387 F.3d 461, 463 (6th Cir. 2004); *see also Al's Jewelry and Loan, Inc. v. United States Dept. of Treasury, Bureau of Alcohol, Tobacco and Firearms*, No. 94-73971, 1996 WL 683528, at *3-*4 (6th Cir. Nov. 22, 1996). A willful violation occurs where a "petitioner understood the requirements of the law but knowingly failed to follow them <u>or was indifferent toward them</u>." *3 Bridges v. United States*, 216 F.Supp.2d 655, 659 (E.D. Ky. 2002) (emphasis added) (citing *Peri v. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms*, 637 F.2d 1332) (9th Cir. 1981) (citing *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979); *see also Stein's Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir. 1980) ('The GCA does not require bad purpose or evil motive before a license may be revoked or a renewal application denied. The Secretary need only prove that the petitioner knew of

his legal obligation and purposefully disregarded or was plainly indifferent to the record-keeping requirements.") (emphasis added).

The record is not completely clear regarding Petitioner's level of knowledge about Wesley Stokes' activities. The record does reflect that Petitioner did have some level of awareness of the problems associated with Wesley. Petitioner had a conversation at the store with Wesley in December 2011 and discussed the need for him to straighten out his life. He was aware of the thefts of firearms by Wesley Stokes and at some point was informed by Scott Stokes that Wesley stole the firearms to support a drug habit. (See Report of Hearing Officer, DN 10-1 at p. 20; Findings and Conclusions in Support of Revocation, DN 10-1 at p. 7). But even if, as Petitioner claims, he had absolutely no knowledge of the violations, the inescapable fact remains that he was the Holder of the Federal Firearms License, and could not simply choose to ignore whatever was going on at the establishment operating under that License. If Petitioner indeed had no knowledge – which is doubtful – he nevertheless is guilty of indifference to the law and regulations, and the violations thereof. The agency's decision was correct.

    C.    <u>Petitioner is Responsible for Violations Committed by Scott and Wesley Stokes</u>.

Petitioner argues that he cannot be held accountable for the actions of those working at Danny's Gun Repair – namely, Scott and Wesley Stokes – and that the Stokes' alone are responsible. Again, the law does not support Petitioner's position. "Shifting the blame to employees is improper in light of the serious, potentially dangerous, and repeated nature of Shawano's violations." *Shawano,* 2010 U.S. Dist. Lexis 77907 (E.D. Wis. 2010). Petitioner urges that the doctrine of *respondeat superior* does not apply, because Wesley Stoke was technically not an employee. This argument

10

fails. Whether or not Wesley Stokes was ever actually paid a salary, he clearly worked at the store with the full knowledge of his father, Scott Stoke, and committed violations in the process. Further, in this context, *respondeat superior* has been applied to <u>agents</u> as well as to employees. *See McLemore v. Treasury Dept.*, 317 F.Supp. 1077 (N.D. Fla. 1970) ("the mere fact that a part of the above mentioned violations are attributable to the <u>agents</u> or employees of petitioner in no way mitigates the conduct of petitioner, and under the respondeat-superior doctrine, petitioner can be held blameworthy for their acts").

CONCLUSION

For the reasons stated above, the decision of the ATF to revoke the Federal Firearms License of Charles S. Kimberl d/b/a Danny's Gun Repair, was correct under the law. Therefore, this Court should uphold the agency's action and should enter a judgment in favor of the defendant United States in this matter.

Respectfully submitted,

DAVID J. HALE
United States Attorney

/s/ Brady Miller
Brady Miller
Assistant U.S. Attorney
717 W. Broadway
Louisville, KY 40202
(502) 582-5166; fax 625-7110
Email: brady.miller@usdoj.gov

**CERTIFICATE OF SERVICE**

       I hereby certify that on December 20, 2013, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:


Joseph A. Hammer
Hammer & Associates
P.O. Box 19438
Louisville, KY 40259-0438


                                   /s/ Brady Miller
                                   Brady Miller
                                   Assistant U.S. Attorney
                                   717 W. Broadway
                                   Louisville, KY 40202
                                   (502) 582-5166; fax 625-7110
                                   Email: brady.miller@usdoj.gov